IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :          CASE NO. 10-07374 (ESL)

VIRGEN P. MERCADO ALVAREZ          :          CHAPTER 13

                                                     :

         Debtor                                   :

_____:

OPINION AND ORDER

    Virgen P. Mercado Alvarez (hereinafter referred to as "Debtor") filed an Objection to Claim Number 8-1 by RNPM, LLC (hereinafter referred to as "RNPM"). RNPM, by and through Operating Partners Co., Inc., filed its opposition thereto. The issue before the court is whether the reasonableness standard in 11 U.S.C. §506(b) applies to pre-petition attorney's fees fixed under a penal clause in the mortgage agreement, or whether the anti-modification provision of 11 U.S.C. §1322(b)(2), in conjunction with 11 U.S.C. §1322(e), are controlling. For the reasons stated herein, this court finds that 11 U.S.C. §1322(e) is the controlling section for determining the amount of pre-petition mortgage arrearages, and that the procedure to determine the reasonableness of attorney's fees pursuant to Fed. R. Bankr. P. 2016 is not applicable in the instant case. The court further finds that there are grounds for equitable intervention to reduce the amounts claimed for attorney's fees.

Facts and Procedural Background

    Virgen P. Mercado Alvarez filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on August 13, 2010. The Debtor included Operating Partners Co., Inc. in its Schedule D (Creditor's Holding Secured Claims) as a secured creditor over a property mortgage in the amount of $79,000.00. On September 15, 2010, RNPM filed proof of claim #4-1 as a secured claim in the amount of $77,589.67 with a property value of $105,000.00 (Claims Register, Claim #4-1). On September 27, 2010, RNPM filed proof of claim #8-1 as a secured claim in the amount of $7,600.00 for "attorney fees by the complaint." RNPM's proof of claim for attorney fees included as a supporting document a copy of the complaint filed against Debtor in November 2009 in the Court of First Instance of the Commonwealth of Puerto Rico, Fajardo Section, Case #NSCI 2009-00887

1 (Claims Register, Claim #8-1, pgs. 2-7).

2      On September 27, 2010, RNPM filed an objection to Debtor's plan confirmation based on the

3 following: (i) "[i]n accordance with Mortgage Deed No. 568 as executed by debtor on November 7,

4 2003, the attorneys' fees of 10% of the original balance owed ($76,000.00) are 'liquid and payable

5 by the sole act of filing the complaint;'" and (ii) Debtor's plan fails to provide for the payment of

6 secured attorney fees of RNPM in the amount of $7,600 and thus, the plan is insufficiently funded

7 and may not be confirmed under 11 U.S.C. §1325 (Docket No. 14). On October 5, 2010, Debtor filed

8 a motion objecting RNPM's claim number 8-1 regarding the $7,600 in attorney fees based upon the

9 following: (i) the mortgage deed provides for attorney fees,  but the $7,600.00 amount claimed in the

10 proof of claim is unreasonable for just filing a complaint in state court; and (ii) RNPM has failed to

11 provide a detailed description (explanation) of legal services rendered, number of hours worked and

12 the hourly rate in conformity with Fed. R. Bankr. P. 2016 (Docket No. 16).  On November 5, 2010,

13 RNPM filed its answer to Debtor's objection to claim number 8 alleging the following: (1) under the

14 terms of the mortgage agreement, particularly the Third paragraph[1], the entire amount of $7,600.00

15 became due and payable upon the filing of the complaint for mortgage foreclosure and is not subject

16 to a reasonableness determination regardless of whether any further action was taken by the creditor;

17 (2) the entire amount of $7,600.00 became due and payable pre-petition and constitutes an integral

18 component of Debtor's pre-petition arrearage that must be cured through the plan; (3) the third

19

20      [1] The Third paragraph of the Mortgage Agreements states: "[t]o secure to Lender or to the

21 holder by endorsement of the note (a) repayment of the indebtedness evidenced by the Note, with
interest thereon, (b) the performance of the covenants and agreements if Borrower herein contained,

22 (c) an amount of ten percent of the original principal amount of the Note to cover costs, expenses
and attorney's fees in the event the holder of the Note is required to foreclose this Mortgage or seek

23 judicial collection, or collection in any proceeding in bankruptcy of the Borrower, which amount
shall be considered liquid and payable by the sole act of filing the complaint and shall be in addition

24 to the principal amount of the Note, (d) an amount of ten percent of the original principal amount of
the Note to cover any other advances which may be made under this Mortgage and (e) an amount of

25 ten percent of the original principal amount of the Note to cover, interest in addition to that secured

26 by law, Borrower does hereby create a voluntary first mortgage on the Property. In the event this
Mortgage is not recorded at the Registry with the agreed rank, the same shall constitute a default

27 hereunder entitling Lender to the remedies provided in paragraph 18 hereof" (Claims Register,
Proof of Claim #4-1).

28

paragraph of the Mortgage Agreement is a valid and enforceable penal clause which was triggered by the filing of the complaint in state court on November 3, 2009; (4) "[a]ccording to the Supreme Court of Puerto Rico, the purposes of the referenced mortgage provisions are (i) to anticipate the liquidation of the damages that a breach of contract may produce; and (ii) to introduce elements of restriction and threat to compel the mortgagor to perform its obligations under the agreement;" (5) Section 506(b) of the Bankruptcy Code and Fed. R. Bankr. P. 2016 are inapplicable to this matter and are displaced by 11 U.S.C. §1322(e); (6) "[u]nder §1322(e), the terms of the underlying mortgage agreement and applicable state law determine the default cure amount when a Chapter 13 plan provides for the curing of the default and maintenance of payments to a creditor whose claim is secured only by a security interest in real property that is debtor's residence;" (7) "[i]nasmuch as §1322(e) overrides Section 506(b) of the Bankruptcy Code, the default cure amount is the same regardless of whether the claim is undersecured or oversecured;" (8) Section 1322(e) is not limited to interest but is equally applicable to costs, expenses and attorneys' fees; and (9) "[t]he anti-modification provisions of §1322(b)(2) of the Bankruptcy Code have limited exceptions. Although §1322(b)(5) allows the debtor to cure a default through the plan, it does not allow the debtor to modify the rights of a home mortgage lender beyond the scope of the limited exceptions of the anti-modification provisions of §1322(b)(2)" (Docket No. 21).  Subsequently, the court on November 16, 2010, entered an Order granting Debtor's objection to Claim Number 8 based on the reasonableness requirement under Section 506(b) and on the loadstar approach (Docket No. 22).

On November 23, 2010, RNPM filed its Supplemental Objection to Debtor's Plan Confirmation whereby it argues the following: (i) Sections 1322(b)(2) and (5) must be read in conjunction with Section 1322(e); (ii) "[t]he clear purpose of section 1322(e) was to limit the rights of the parties to those contemplated in the original transaction and to 'limit the secured creditor to the benefit of the initial bargain with no court contrived windfall'" In re Plant, 288 B.R. 635, 641 (Bankr. D. Mass. 2003) (Docket No. 27, pgs. 5-6); (iii) "...section 1322(e) clearly provides that the underlying agreement executed between the parties and state law–not section 506(b)– will determine the amount of the arrearage necessary to cure a default pursuant to the Section 1322(b)(5);" In re Plant, 288 B.R. at 640-641; (iv) Section 1322(e) "'applies with respect to interest, fees and costs to every contract

3

effective after October 22, 1994, regardless of whether a particular claim is secured or unsecured, oversecured or undersecured'" In re Plant, 288 B.R. at 642 (v) "a creditor is, thus, entitled, to interest and other charges only if: (1) as a matter of threshold they are required under the underlying agreement; and (2) they are not prohibited by state law;" (vi) the Court's November 16, 2010 Order is in conflict with the provisions of Section 1322(e) because the reasonableness requirements under Section 506(b) for pre-petition attorney's fees are inapplicable due to the following: (1) the underlying mortgage agreement does not subject the costs, expenses and attorneys' fees to a reasonableness test; and (2) the pertinent provisions of the underlying mortgage agreement are not prohibited under the applicable state law; (vii) clause 19[2] of the fourth paragraph ("the referenced contractual provisions contain the standard FHA-insured mortgage cure mechanism") of the mortgage agreement provides the Debtor with the right to reinstate and decelerate the mortgage loan if certain requirements are satisfied such as making a lump sum payment to cure all the arrearage and to bring the mortgage current; (viii) borrower's right to reinstatement allows for the payment of reasonable attorney's fees related to enforcing the covenants and agreements of the borrower; and (ix) Debtor may not elect "the benefits if the fee shifting contractual provision that would apply under the contractual mortgage reinstatement scenario and at the same time invoke the benefits of the provisions of §1322(b)(5) In re Tudor, 342 B.R. 540, 563-564 (Bankr. S.D. Ohio 2005)(Docket No. 27).  Subsequently, RNPM on November 23,  2010 filed a motion requesting extension of time to appeal Order entered on

---

[2] Clause 19 of the Fourth Paragraph of the Mortgage Agreement states: "Notwithstanding Lender's acceleration of the sums secured by this Mortgage, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note including advances, if any, had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in paragraph 18 hereof, including, but not limited to, attorney's fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred." (Docket No. 27, pg. 13).

4

1   November 16, 2010 (Docket No. 22) pursuant to Fed. R. Bankr. P. 8002(c)(2) (Docket No. 28). On

2   November 24, 2010, the court granted RNPM's request by extending the time to file a notice to

3   appeal by twenty-one (21) days from the expiration of the time to file the notice of appeal (Docket

4   No. 29).

5          On December 1, 2010, a confirmation hearing was held.  The Chapter 13 Trustee favorably

6   recommended Debtor's Chapter 13 plan and RNPM objected to the same based on the legal

7   arguments contained herein (Docket No. 36). The court granted Debtor 20 days to answer the

8   supplemental objection and thereafter the matter would be taken under advisement (Docket No. 39).

9   On January 11, 2011, Debtor filed its Supplemental Objection to Claim #8-1 filed by RNPM and

10  presented the same arguments included in its prior objection to claim #8-1 (Docket No. 21). On

11  February 11, 2011, RNPM filed its answer to Debtor's Supplemental Objection to Claim Number 8

12  (Docket No. 41).  On February 14, 2011, RNPM filed a motion to submit power of attorney in

13  conformity with Fed. R. Bankr. P. 9010(c) (Docket No. 42).

14         The main issue before this court is whether a chapter 13 debtor that wants to cure pre-petition

15  mortgage arrearages pursuant to Section 1322(b)(5), must determine the amount of the pre-petition

16  arrearages (in particular pre-petition attorney's fees)  in conformity with Section 506(b) or pursuant

17  to Section 1322(e).

18                              Applicable Law & Analysis

19  *Curing Pre-Petition Mortgage Arrearages Through a Chapter 13 Plan*

20         The Supreme Court in Rake v. Wade held that pursuant to Sections 506(b), 1322(b) and

21  1325(b)(5) holders of oversecured claims had an unqualified right to pre-confirmation and post-

22  confirmation interest[3] on mortgage arrearages, irrespective of whether the agreement giving rise to

23  such claim was silent or state law prohibited the same.  In this particular case, the mortgage notes did

24

25  ───────────────

26         [3] There is a difference between post-petition and post-confirmation interest. Post-petition
    interest accrues on a pre-petition claim from the commencement of the case and the effective date

27  of a confirmed plan. Post-confirmation interest starts accruing on and after the effective date of the
    plan. See Allan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶506.04[2] (16th ed.

28  2010).

                                          5

not provide interest on arrearages and applicable state law did not require payment of interest on arrearages. <u>Rake v. Wade</u>, 508 U.S. 464, 124 L. Ed. 2d 424, 113 S. Ct. 2187 (1993). Subsequent to the Supreme Court's decision in <u>Rake v. Wade</u>, Section 1322(e) was enacted by the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, §305, 108 Stat. 4106 (1994) to overrule the Supreme Court's holding in <u>Rake v. Wade</u>, for agreements entered into after October 22, 1994. [4]

Section 506(b) of the Bankruptcy Code provides, "[t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. §506(b). Section 506(b) mandates the allowance of post-petition interest, fees, costs and charges for over-secured claims. <u>See</u> Allan N. Resnick & Henry J. Sommer, 4 <u>Collier on Bankruptcy</u> ¶506.04[1] (16th ed. 2010). The rate of post-petition interest is mandated in accordance with the underlying contract or applicable nonbankruptcy law. <u>See</u> Allan N. Resnick & Henry J. Sommer, 4 <u>Collier on Bankruptcy</u> ¶506.04[2] (16th ed. 2010). However, the contractual interest rate may not be enforced if it is greater than the rate allowed by applicable nonbankruptcy law. <u>Id</u>. "In the case of postpetition fees, costs and charges, the allowance of these expenses as part of an oversecured claim is subject to a determination as to their reasonableness

---

[4] Congress' express intent of overruling <u>Rake v. Wade</u> is evident from Congressman Brooks analysis of Section 1322(e) which stated: "[t]his section will have the effect of overruling the decision of the Supreme Court in <u>Rake v. Wade</u>. In that case, the Court held that the Bankruptcy Code required that interest be paid on mortgage arrearages paid by the debtors curing defaults on their mortgages. Notwithstanding state law, this case has had the effect of providing a windfall to secured creditors at the expense of unsecured creditors by forcing debtors to pay the bulk of their income to satisfy the secured creditors' claims. This had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable law prohibits such interest and even when it was something that was not contemplated by either party in the original transaction. This provision will be applicable prospectively only, i.e., it will be applicable to all future contracts, including transactions that refinance existing contracts. It will limit the secured creditor to the benefit of the initial bargain with no court contrived windfall.  It is the Committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred." Keith M. Lundin & William H. Brown, <u>Chapter 13 Bankruptcy</u>, 4th Edition, §135.1, at ¶ [3], Sec. Rev. June 1, 2004, www.Ch13online.com. citing 140 Cong. Rec. H10, 770 (section by section analysis by Congressman Brooks).

6

1  under federal bankruptcy law." Id.

2      Section 1322(e) provides, "[n]otwithstanding subsection (b)(2) of this section and sections

3  506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary

4  to cure the default shall be determined in accordance with the underlying agreement and applicable

5  nonbankruptcy law." 11 U.S.C. §1322(e).  Section 1322(e) does not apply exclusively to the curing

6  of interest on arrears but also includes other charges that comprise the arrerage mortgage claim such

7  as attorney's fees, costs and late charges. See Keith M. Lundin & William H. Brown, Chapter 13

8  Bankruptcy, 4th Edition, §135.1, at ¶ [8], Sec. Rev. June 1, 2004, www.Ch13online.com. ("The recovery

9  of attorneys' fees, costs and late charges as components of curing default with respect to a contract

10  after October 22, 1994, will be determined by the agreement and nonbankruptcy law."); Deutsche

11  Bank Nat'l Trust Co. v. Tucker, 621 F. 3d 460, 464 (6th Cir. 2010); In re Plant, 288 B.R. 635, 641

12  (Bankr. D. Mass. 2003)("When a debtor seeks to cure a prepetition payment default over the life of

13  a Chapter 13 plan pursuant to §1322(b)(5), the amount of the arrearage must be 'determined in

14  accordance with the underlying agreement and applicable nonbankruptcy law'"); In re Gagne, 378

15  B.R. 439, 443 (Bankr. D. N.H. 2007); In re Adejobi, 404 B.R. 78, 81 (Bankr. E.D.N.Y. 2009).

16  Moreover, it is important to note that Section 1322(e) does not provide a different treatment for curing

17  pre-petition defaults for undersecured or oversecured debts. See In re Plant, 288 B.R. 635 at 642;

18  Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §138.1, at ¶ [10], Sec. Rev.

19  June 1, 2004, www.Ch13online.com. ("The extent of security is irrelevant to new §1322(e)– even if

20  the residential mortgage is entirely unsecured, if the plan cures default, the mortgage holder will be

21  entitled to recover whatever charges are allowed by the underlying agreement and nonbankruptcy

22  law").

23      This court concludes that in a chapter 13 case in which a secured creditor is solely secured by

24  the debtor's principal residence, 11 U.S.C. §1322(e) is the applicable section of the Bankruptcy Code

25  that must be employed to determine the amount of the pre-petition arrearages (in this case,  pre-

26  petition attorney's fees) that must be paid pursuant to Section 1322(b)(5) or (1322(b)(3)) based on

27  "[o]rdinary canons of statutory construction [which] would interpret 'notwithstanding' in §1322(e)

28  to mean that §1322(e) controls whether and to what extent fees, costs and other charges are allowed

7

1   to cure default with respect to all mortgages entered into after October 22,1994– including

2   oversecured mortgages and including entitlements during the period between the petition and

3   confirmation of a plan." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4[th] Edition,

4   §138.1, at ¶ [12], Sec. Rev. June 1, 2004, www.Ch13online.com. Thus, Section 506(b) reasonableness

5   requirement for curing arrearages (in particular attorney's fees) is not applicable in the instant case,

6   since Section 1322(e) is the controlling section.[5] Section 506(b) has no applicability in the cure

7   situation in which a debtor is merely keeping the original contract in place and bringing it up to date.

8   In other words, the amount necessary to cure a default through 11 U.S.C. §1322(b)(5) is the same

9   amount as would be required to cure if the debtor were not in bankruptcy.").

10          The court clarifies that the anti-modification provisions of Section 1322(b)(2)[6] regarding the

11  rights of secured mortgage holders secured solely with the debtor's residence is subject to the

12  exceptions found in subsections 1322(c) and (e). See Allan N. Resnick & Henry J. Sommer, 8 Collier

13  on Bankruptcy ¶1322.06[1] (16th ed. 2010). However, the exception found in Section 1322(e) for the

14  anti-modification provision of Section 1322(b)(2) for the claims of secured mortgage holders should

15  only be employed when these two sections are in conflict.

16

17  _____

18          [5]Section 1322(e) may be an unfortunate section of the Bankruptcy Code because it fails to

19  impose a reasonableness requirement on curing defaults for attorney's fees, meaning that it opens
    the door for unreasonable attorney's fees to be allowed by contract and state law in direct

20  contravention to the principle of affording debtors with a fresh start. See Keith M. Lundin &
    William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §138.1, at ¶ [33], Sec. Rev. June 1, 2004,

21  www.Ch13online.com. ("When §506(b) is not applicable, and with respect to all agreements after

22  October 22, 1994, the Bankruptcy Code does not impose a reasonableness condition on attorney
    fees as an element of curing defaults– if allowed by contract and state law, even unreasonable

23  attorney fees may creep into the arrearage claim."); Padilla v, GMAC Mortg. Corp. (In re

24  Padilla), 389 B.R. 409, 438-439 (Bankr. D. Pa. 2008) ("By its very terms, 11 U.S.C. §1322(e)
    "trumps" 11 U.S.C. §506(b)).

25

26          [6] Section 1322(b)(2) provides, that a debtor subject to subsections (a) and (c) of this
    section through a Chapter 13 plan may, "modify the rights of holders of secured claims, other

27  than a claim secured only by a security interest in real property that is the debtor's principal
    residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class

28  of claims." 11 U.S.C. §1322(b)(2).

*Enforceability of Penal Clause in Mortgage Deed under the Civil Code of Puerto Rico*

The Mortgage Agreement entered into by Debtor and the prior mortgage holder, R&G Mortgage Corporation, contains a penal clause in its Third paragraph which states:

> "[t]o secure to Lender or to the holder by endorsement of the note (a) repayment of the indebtedness evidenced by the Note, with interest thereon, (b) the performance of the covenants and agreements of Borrower herein contained, (c) an amount of ten percent of the original principal amount of the Note to cover costs, expenses and attorney's fees in the event the holder of the Note is required to foreclose this Mortgage or seek judicial collection, or collection in any proceeding in bankruptcy of the Borrower, which amount shall be considered liquid and payable by the sole act of filing the complaint and shall be in addition to the principal amount of the Note, (d) an amount of ten percent of the original principal amount of the Note to cover any other advances which may be made under this Mortgage and (e) an amount of ten percent of the original principal amount of the Note to cover, interest in addition to that secured by law, Borrower does hereby create a voluntary first mortgage on the Property. In the event this Mortgage is not recorded at the Registry with the agreed rank, the same shall constitute a default hereunder entitling Lender to the remedies provided in paragraph 18 hereof" (Claims Register, Proof of Claim #4-1).

RNPM argues that the above referenced penal clause, in particular section (c) of the Third paragraph of the Mortgage Deed was triggered by the filing of a complaint for collection of monies action in state court and in conformity with said penal clause, 10% of the original principal amount (in this case $7,600) became liquid and payable upon the filing of the complaint to cover costs, expenses and attorney's fees. Debtor does not contest that such penal clause is applicable but argues that attorney's fees in the amount of $7,600 is unreasonable, given that the mortgage payment in arrears is about the same amount as the attorney's fees. Debtor also argues that this particular claim is burdensome for the Debtor to the extent that it makes it almost impossible for her to retain her residential property (Docket No. 40). In the Commonwealth of Puerto Rico, penal clauses are mandated by Articles 1106-1109 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§3131-3134.

*Articles 1106-1109 of the Puerto Rico Civil Code, 31 L.P.R.A. §§3131-3134*

Pursuant to the Puerto Rico Civil Code penal clauses have a punitive function that compels the debtor to perform due to the additional security they provide for creditors and which penalizes a debtor's nonperformance of the obligation by making the same more burdensome and increasingly onerous for the debtor. See Jack's Beach Resort, Inc. v. Puerto Rico Tourism Development Company, 112 D.P.R. 344 (1982), 12 P.R. Offic. Trans. 430 (1982).   In the Commonwealth of Puerto Rico, penal clauses are governed by Articles 1106-1109 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§3131-3134.

9

Article 1106 of the Puerto Rico Civil Code provides,

"[i]n obligations with a penal clause the penalty shall substitute indemnity for damages and the payment of interest in case of nonfulfilments, should there be no agreement to the contrary. This penalty can only be enforced when it is demandable in accordance with the provisions of this title." 31 L.P.R.A. §3131.

Article 1107 of the Puerto Rico Civil Code states,

"[t]he debtor cannot exempt himself from the fulfilment of the obligation by paying the penalty, unless such right has been expressly reserved to him. Neither may the creditor exact the fulfilment of the obligation and also the payment of the penalty, unless such right has been clearly granted him." 31 L.P.R.A. §3132.

Article 1108 of the Puerto Rico Civil Code states,

"[t]he court or judge shall equitably modify the penalty if the principal obligation should have been partly or irregularly fulfilled by the debtor." 31 L.P.R.A. §3133.

Article 1109 of the Puerto Rico Civil Code states,

"[t]he nullity of the penal clause does not carry with it that of the principal obligation. The nullity of the principal obligation carries with it that of the penal clause." 31 L.P.R.A. §3134.

Article 1108 of the Puerto Rico Civil Code, 31 L.P.R.A. §3133 provides for the modification of the penal clause if the principal obligation should have been partly or irregularly fulfilled by the debtor. The Puerto Rico Supreme Court in the seminal case (with respect to penal clauses contained in mortgage agreements) of Jack's Beach Resort, Inc. v. Puerto Rico Tourism Development Company, 112 D.P.R. 344 (1982), 12 P.R. Offic. Trans. at 438, explains that this equitable remedy against the excessive burden of the penal clause should only be used with "great caution and notorious justification" in extraordinary circumstances "as a means of mitigating its excessive onerousness for the obligee, or the alarming lack of proportion." Id. The reason the court must exercise "great caution and notorious justification" when modifying a contractual penal clause is based on the doctrines of the autonomy of the parties to enter into contracts pursuant to Article 1207[7] of the Puerto Rico Civil Code and the principle of *pacta sunt servanda* based on Article 1044[8] of the Puerto Rico Civil Code, 31 L.P.R.A.

[7] Article 1207 of the Puerto Rico Civil Code provides, "[t]he contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order." 31 L.P.R.A. §3372.

[8] Article 1044 of the Puerto Rico Civil Code provides, "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their

1   §2994, which holds parties to strict compliance with the terms of their bargain. Moreover, Article 1233

2   of the Puerto Rico Civil Code provides that, "[i]f the terms of a contract are clear and leave no doubt as

3   to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the

4   words should appear contrary to the evident intention of the contracting parties, the intention shall

5   prevail." 31 L.P.R.A. §3471.  In its analysis of the modification of penal clauses, the Supreme Court

6   in Jack's Beach Resort, Inc. v. Puerto Rico Tourism Development Company noted that it was not

7   necessary for the debtor to pray for such equitable remedy but that the debtor's mere objection to the

8   foreclosure proceedings was sufficient to activate the court's equitable intervention. Id. at 439.  Morever,

9   the Supreme Court held that the mitigation of attorney's fees pursuant to a penal clause, "should be

10  geared to an adjustment that, without eliminating the penal nature of the clause, reduces the penalty to

11  make it proportional to the degree of fault and the magnitude of the harm caused." Id. at 441.

12          After thoroughly reviewing the totality of circumstances in the instant case, this court finds

13  that there are grounds for equitable intervention pursuant to Article 1108 of the Puerto Rico Civil

14  Code, 31 L.P.R.A. §3133.  The Debtor has partly fulfilled her mortgage payment obligations under

15  the mortgage note since January 2004,  and she (Debtor) intends to cure the mortgage arrears on her

16  mortgage and continue making her monthly mortgage payments through her Chapter 13 plan. The

17  court is aware that at the time of Debtor's bankruptcy petition filing she had not made any mortgage

18  payments to RNPM for over a year.  Debtor's Chapter 13 Payment Plan details $6,400 of arrears to

19  Operating Partners (Docket No. 2) and Debtor's Chapter 13 Statement of Current Monthly Income

20  and Calculation of Commitment Period and Disposable Income (Form B22C) lists monthly mortgage

21  payments of $491[9] (Docket No. 1). In the instant case, RNPM's collection action in state court

22  proceeded up to the point of the filing of the complaint by RNPM.

23          This court finds that the penalty of $7,600.00 for attorney's fees in a case which proceeded

24  only up to the point of the filing of the complaint by RNPM lacks proportion to the circumstances

25

26      stipulations." 31 L.P.R.A. §2994.

27          [9]The court notes that there is a discrepancy between the amount for the home mortgage
    listed in Schedule J, line item #1 reflects an amount of $461.00 and Form B22C, Subpart C, line
28  item #47 reflects an amount of $491 (Docket No. 1).

11

present in the instant case, wherein an individual intends to cure the mortgage payment arrears and continue making the monthly mortgage payments through a chapter 13 plan. Moreover, this court finds that the imposition of the $7,600 penalty for attorney's fees for initiating a collection of monies action would result inequitable unfair consequences, namely the creditor's attorney getting a windfall at the expense of the unsecured debtors and negating the honest but unfortunate debtor its fresh start. Thus, this court modifies the penalty for attorney's fee should be equitably reduced to $2,000.00.[10]

The court clarifies that the Debtor is not before a reinstatement procedure as described in clause 19 of the fourth paragraph of the Mortgage Agreement which affords the borrower the right to reinstate and decelerate the mortgage loan, after acceleration[11] and foreclosure procedures have begun, if certain requirements are satisfied. The cure of mortgage arrearages paid over several payments through a Chapter 13 plan does not constitute a contractual mortgage reinstatement  which requires a lump sum payment of the mortgage arrearages. See In re Tudor, 342 B.R. 540, 563-566 (Bankr. S.D. Ohio 2005); Dollar Bank v. Petroff (In re Petroff), 2001 Bankr. Lexis 1594 (B.A.P. 6th Cir. 2001).

---

[10]See Manuel Albaladejo García, Comentarios al Código Civil y Compilaciones Forales, t. XV, Vol. 2, 485-488, Madrid, Ed. Revista de De Derecho Privado,1983 for a discussion regarding the Judge's discretion to mitigate equitably the contractual penalty.

[11]Clause 18 of the Fourth Paragraph of the Mortgage Agreement states: "Except as provided in paragraph 17 hereof, upon borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 14 hereof specifying: (1) the breach; (2) the action required to cure the breach; (3) a date, not less than thirty (30) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert the non-existence of a default or any other defense of Borrower to acceleration and foreclosure in the foreclosure proceeding. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, attorney's fees, and costs of documentary evidence, abstracts and title reports." (Claims Register, Proof of Claim #4-1)

1   *Applicability of Fed. R. Bankr. P. 2016 to 11 U.S.C. §1322(e)*

2          Fed. R. Bankr. P. 2016(a) provides in pertinent part, "[a]n entity seeking interim or final

3   compensation for services, or reimbursement of necessary expenses, from the estate shall file an

4   application setting forth a detailed statement of (1) the services rendered, time expended and expenses

5   incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a).  Fed. R. Bankr. P. 2016 is

6   applicable for claims for attorney's fees pursuant to Section 506(b) of the Bankruptcy Code. See Allan

7   N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy ¶2016.04(16th ed. 2010). Thus, a creditor

8   requesting attorney's fees pursuant to Section 506(b) must abide by Fed. R. Bankr. P. 2016(a). In the

9   instant case, this court has determined that the controlling section to determine the amount of pre-

10  petition attorney's fees is Section 1322(e) of the Bankruptcy Code, meaning that the mortgage

11  agreement and/or state law is determinative of the pre-petition attorney's fees.

12         In the case of In re Plant, 288 B.R. at 642-644 (Bankr. D. Mass. 2003),  the bankruptcy court

13  held that a mortgage holder's entitlement to pre-petition attorney's fees and the standards employed

14  to determine the same were in accordance with Massachusetts state law, which in turn employs

15  several factors to determine the reasonableness of attorney's fees. The court also determined that Fed.

16  R. Bankr. P. 2016 governed the procedure for determining the reasonableness of the attorney's fees

17  supporting its reasoning on the following: (i)"... a federal court interpreting state law is bound to

18  employ the substantive law of that state, matters of procedure are determined by the rules of the

19  forum;" (ii) the creditor's claim of attorney's fees would be paid from estate property in conformity

20  with 11 U.S.C. §1306 and Fed. R. Bankr. P. 2016 provides in pertinent part that, "an entity seeking

21  interim or final compensation for services, or reimbursement of necessary expenses, from the estate,

22  shall file an application"; and (iii) "[w]hile MBLR 2016-1 does not specifically reference §1322(e),

23  §105(a) provides more than sufficient support for this Court's authority to require compliance with

24  that rule. This procedural device not only allows the Court to effectuate FRBP 2016's purpose of

25  protecting assets of the bankruptcy estate, but also ensures that Congress' intent codified in §1322(e)

26  is upheld. Secured creditors may not enjoy a 'court contrived windfall' at the expense of debtors or

27  unsecured creditors by collecting unjustified attorney fees." In re Plant, 288 B.R. at 643-644. In the

28  case before this court, the substantive law of the Commonwealth of Puerto Rico as discussed herein

13

regarding the mortgage holder's entitlement to pre-petition attorney's fees does not employ a reasonableness standard for attorney's fees. Thus, if the substantive law of the state does not employ a reasonableness standard, then the court is unable to employ Fed. R. Bankr. P. 2016 which governs the procedure to determine the reasonableness of pre-petition attorney's fees.

### Conclusion

In view of the foregoing, the court finds that 11 U.S.C. §1322(e) is the controlling section for determining the amount of pre-petition mortgage arrearages and that the procedure to determine the reasonableness of attorney's fees pursuant to Fed. R. Bankr. P. 2016 is not applicable in the instant case. This court also finds that pursuant to Article 1108 of the Puerto Rico Civil Code, 31 L.P.R.A. §3133, there are grounds for equitable intervention regarding the above referenced penal clause and as such finds that the penalty for attorney's fee should be equitably reduced to $2,000.00.

SO ORDERED.

In San Juan, Puerto Rico, this 6th day of September 2011.

Enrique S. Lamoutte
United States Bankruptcy Court